MARK D. JAMISON, Plaintiff-Appellant, v. THE CITY OF ZION, Defendant-Appellee (Gina M. Roberts, Indiv. and as Trustee of the Gina M. Roberts Trust, dated November 3, 2001, Defendant).

Second District No. 2—04—1050

Opinion filed August 12, 2005.

BOWMAN, J., dissenting.

John H. Bickley, Jr., of Law Offices of John H. Bickley, Jr., of Waukegan, for appellant.

Scott A. Puma, of Ancel, Glink, Diamond, Bush, DiCianni & Rolek, P.C., of Waukegan, for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Mark D. Jamison, appeals from an order of the circuit court of Lake County dismissing with prejudice count I of his amended complaint for *mandamus* against defendant, the City of Zion (city). We reverse and remand.

Plaintiff lives at 3333 Sharon Place in the city. Sharon Place is a dedicated road. Plaintiff's next-door neighbor to the south, whose property also abuts Sharon Place, placed large lilac bushes and a fence in the right-of-way of Sharon Place. The bushes extend onto the roadway. Plaintiff avers that they create a dangerous condition by obstructing the width of the roadway and blocking motorists' ability to see oncoming traffic on Sharon Place when anyone pulls out of plaintiff's driveway onto Sharon Place.

On July 7, 2003, the city sent the property owner to plaintiff's south a notice that the lilac bushes encroached into the public right-of-way and directed that they be trimmed within seven days. The city attached copies of the pertinent ordinances to the letter. The owner did not trim the bushes, and the city took no further action although its ordinance provided that it "may" abate the encroachment itself and charge the owner for the abatement. Plaintiff requested the Lake County State's Attorney to abate the encroachment. The State's Attorney also declined. Thereafter, plaintiff filed suit. On July 6, 2004, plaintiff filed an amended complaint for *mandamus*. Count I is directed against the city and relies on statutory enactments as well as the city's ordinances. Count I also pleads a common-law duty on the city to remove the obstruction from the roadway. The trial court dismissed count I with prejudice, holding that any duty the city owes to plaintiff is discretionary. Plaintiff filed this timely appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

■ "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.' " *Park Superintendents'*

*Professional Ass'n v. Ryan*, 319 Ill. App. 3d 751, 757 (2001), quoting *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). We agree with the trial court that the ordinance providing that the city "may" abate an obstruction gives the city discretion whether to do so. Therefore, the ordinance does not furnish a basis for plaintiff to seek *mandamus* against the city.

■ We also agree with the city that plaintiff cannot avail himself of the public nuisance statute, which appears in the Criminal Code of 1961 (720 ILCS 5/47—5 (West 2002)), because the State's Attorney, not the city, has the authority to prosecute crimes. See 720 ILCS 5/47—25 (West 2002); *People v. Nash*, 183 Ill. App. 3d 924, 930 (1989). Although the statute does not allow the city a right of action, as we shall see, the city has a common-law duty to remove obstructions from the roadway and, thus, plaintiff may use a *mandamus* action to compel the city to discharge this duty. *Mamolella v. First Bank of Oak Park*, 97 Ill. App. 3d 579, 583 (1981). The question then becomes whether plaintiff has sufficiently pleaded a cause of action for *mandamus*.

■ The trial court dismissed count I pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)). We review *de novo* the granting of a section 2—615 motion to dismiss a complaint for *mandamus*. *Park Superintendents'*, 319 Ill. App. 3d at 757. When reviewing the dismissal of a complaint, we construe the allegations in the light most favorable to the plaintiff and determine whether the plaintiff has alleged sufficient facts to establish a cause of action on which relief may be granted. *Park Superintendents'*, 319 Ill. App. 3d at 757. Rules for pleading *mandamus* are the same as those applicable to actions at law. *Park Superintendents'*, 319 Ill. App. 3d at 757. To plead a cause of action for *mandamus*, a complaint must allege facts that establish a clear right to the relief requested, a clear duty of the defendant to act, and clear authority in the defendant to comply with the order. *Park Superintendents'*, 319 Ill. App. 3d at 757.

### 1. Clear Right to the Relief Requested

■ Plaintiff alleged that he is a member of the public who has been a continuous user of Sharon Place as a public highway. He alleged that his property abuts Sharon Place and that he depends upon a circular driveway on his property for ingress from and egress to Sharon Place. He further alleged that he has the right to have the roadway free of encroachments and obstructions that exist within the public way, so that motor vehicles may be operated safely on the roadway. Plaintiff pleaded that the property owner to the south planted bushes and placed fencing within the right-of-way of Sharon Place. Paragraph 11 alleged:

"These bushes and fencing have been placed within the right-of-way and public way of Sharon Place by agents, servants, and/or employees of the 'Trust Owners,' substantially reducing *** the space of the roadway that may be used for travel by motor vehicles and totally reducing the ability to view south down the said road from [plaintiff's] property, which thereby creates a dangerous condition in need of abatement so as to prevent any vehicle accidents from occurring."

Plaintiff attached as an exhibit to his complaint a survey depicting the paved portion of Sharon Place, the right-of-way, and the placement of the fence and bushes in the right-of-way. The survey also shows the encroachment of the bushes onto the paved portion of the road. We believe that plaintiff has adequately pleaded the existence of a purpresture, which is defined as "an encroachment upon public rights and easements by appropriation to private use of that which belongs to the public." Black's Law Dictionary 1272 (8th ed. 2004). Plaintiff has pleaded that (1) Sharon Place is a public road; (2) there is a public right-of-way adjacent to the paved portion of Sharon Place; (3) the owner of the property to the south of plaintiff's property planted large lilac bushes in the public right-of-way and built a fence in the public right-of-way; and (4) the bushes in the public right-of-way encroach onto the paved portion of the public road, thus obstructing both a portion of the paved road to vehicular traffic and visibility of the paved road from plaintiff's driveway.

## 2. Clear Duty of the Defendant to Act

■ "*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 464 (2004). *Mandamus* cannot be used to direct a public body to reach a particular decision or to exercise its discretion in a particular manner. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301 (2003). Long-settled case law convinces us that the city has a mandatory, rather than discretionary, duty to remove the obstruction from Sharon Place. "Illinois courts have long held that an action for *mandamus* will lie to compel a municipality to discharge its duty to remove purprestures and obstructions from public streets." *Mamolella*, 97 Ill. App. 3d at 583. The source of this duty was explained by our supreme court in *People ex rel. Faulkner v. Harris*, 203 Ill. 272, 279 (1903):

"When a public highway is once established all the beneficial uses of it vest in and devolve upon the public, and where, as in incorporated cities, the title to the streets is vested in the municipality, they are nevertheless charged with the public right. *** [T]he city could have no authority to accept public streets upon

any other conditions than that they should be for public use, and what is meant by public use is that the public shall have the uninterrupted, unimpeded and unobstructed use of every portion and part of such public highway ***."

There is no doubt that plaintiff has pleaded an obstruction of a public street and that this obstruction impairs the ability of vehicles to enter upon the roadway from plaintiff's driveway. "The use of the streets by the public includes the uninterrupted, unimpeded and unobstructed use of every portion thereof. It has the right to use all the ground to travel upon." *People ex rel. Jeffrey v. Murphy*, 254 Ill. App. 109, 113 (1929). Use includes the right to safely enter the roadway. Plaintiff pleaded that the encroachment of the lilac bushes onto the paved portion of Sharon Place narrows the space available for vehicles to negotiate it and that he and others attempting to enter the roadway from his driveway cannot see to make the maneuver safely. Consequently, the public does not enjoy its right to use all of the ground upon which to travel. Plaintiff thus has pleaded that the city has a clear duty to remove the obstruction.

### 3. Clear Authority in the Defendant to Comply With the Order

Plaintiff pleaded that the city has no power or authority to grant exclusive use of its streets to any private person or for any private purpose, but must hold and control possession exclusively for public use. Plaintiff also pleaded the fact that the city sent the homeowner who planted the bushes in the right-of-way a notice that it may abate the encroachment pursuant to its ordinances. It is true that a city holds streets in trust for the public and has no power to grant an easement for private use. *Mamolella*, 97 Ill. App. 3d at 583, citing *Snyder v. City of Mt. Pulaski*, 176 Ill. 397, 402 (1898). We have no doubt that the city in our case has the authority to comply with a trial court's order to remove the obstruction from Sharon Place. While the legislature placed in the State's Attorney the authority to prosecute public nuisances as criminal offenses, it reserved the power of municipalities and counties to declare and abate nuisances within their limits. 720 ILCS 5/47—5 (West 2002). A purpresture is akin to a public nuisance. 58 Am. Jur. 2d *Nuisances* § 12 (2005). A city has the right to regulate the use of its streets. *City of Decatur v. Chasteen*, 19 Ill. 2d 204, 211 (1960). The city in our case demonstrated that it had the capability to comply with a court order when it sent the notice to the offending homeowner. In other words, the city does not lack the proper department or the proper personnel for carrying out an order.

In sum, we hold that plaintiff has pleaded a cause of action for

*mandamus* against the city. We reverse the trial court's order dismissing the complaint with prejudice and remand for further proceedings.

Reversed and remanded.

O'MALLEY, P.J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent. While I agree with the majority's conclusion that the city's ordinances do not provide a basis for *mandamus* relief, I also believe that plaintiff has not sufficiently pled facts to invoke the city's common-law duty to remove obstructions from roadways.

*Mandamus* is an extraordinary remedy to compel the performance of a ministerial, nondiscretionary duty by a public official. *McClaughry v. Village of Antioch*, 296 Ill. App. 3d 636, 643 (1998). A court will grant a writ of *mandamus* only if the petitioner can demonstrate a clear right to the relief sought, a clear duty of the official to act, and clear authority in the official to comply with the writ. *Mason v. Snyder*, 332 Ill. App. 3d 834, 838 (2002).

Focusing first on the issue of whether a duty exists, city ordinances put the duty to trim vegetation that overhangs public places on the owner of the abutting property. Section 98—7(a) of the Zion Municipal Code states:

> "Any tree or shrub which overhangs a sidewalk, street or other public place in the city at a height of less than ten feet or in such a way as to impede or interfere with traffic or travel on such public places *shall be trimmed by the owner of the abutting premises \*\*\**." (Emphasis added.) Zion Municipal Code § 98—7(a) (eff. September 19, 1995).

Section 98—7(c) states that the "superintendent of streets *may* trim or remove any tree or shrub so that the obstruction or danger to traffic or passage shall be done away with." (Emphasis added.) Zion Municipal Code § 98—7(c) (eff. September 19, 1995). Thus, under section 98—7(c), the city's decision to remove trees and shrubs is discretionary, precluding plaintiff from using the ordinance to establish a basis for his *mandamus* action.

In his complaint, plaintiff also referred to the city's common-law duty to remove purprestures and obstructions from public ways. This duty is based on a municipality's obligation "to keep public ways unobstructed and in reasonably safe condition." *Mamolella v. First Bank of Oak Park*, 97 Ill. App. 3d 579, 583 (1981). However, I believe that plaintiff failed to sufficiently allege a clear right to have the city remove the lilac bushes and fencing at issue in this case. I recognize

that plaintiff's complaint, with its attached survey, sufficiently alleges that the bushes and fences are unlawful encroachments in that they are within the public right-of-way. See *Bond v. Dunmire*, 129 Ill. App. 3d 796, 804 (1984) (motion to dismiss admits facts contained in exhibits to complaint). However, the complaint fails to sufficiently allege that the encroachments obstruct the road or make passage on the road unreasonably unsafe; it is undisputed that the bushes and fencing are within the road's *unpaved* right-of-way, and although plaintiff alleges that the encroachments "substantially reduc[e] *** the space of the roadway that may be used for travel by motor vehicles," the survey actually shows that the fence does not intrude into the paved road at all and that just a few bushes even marginally extend over the paved roadway.

Furthermore, plaintiff's allegation that the encroachments "totally reduc[e] the ability to view south down the said [*sic*] road from [plaintiff's] property, which thereby creates a dangerous condition in need of abatement so as to prevent any vehicle accidents from occurring," must be disregarded, as it contains conclusions of fact unsupported by specific factual allegations. See *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1144 (2001); *cf. Murphy*, 254 Ill. App. 109 (driveway that was 18 inches higher than the sidewalk on one side and 13 inches higher than the sidewalk on the other side was an obstruction to pedestrians). Plaintiff has not set forth the size of the encroachments or any other facts showing that the encroachments are unreasonable and compromise public safety; merely labeling them "a dangerous condition" is a factual conclusion. See also *Cummings v. City of Waterloo*, 289 Ill. App. 3d 474, 479 (1997) (factual deficiencies cannot be cured by a liberal construction). The majority's decision, in contrast, could potentially result in a flood of *mandamus* suits against local governments every time that neighbors have a dispute about vegetation that allegedly interferes with the visibility of a road from a driveway.

For the reasons discussed, I would affirm the trial court's decision granting the city's motion to dismiss count I. This holding would not eliminate all avenues of relief available to plaintiff, as he would still retain his cause of action against Roberts, his neighbor.